# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| SOLAR REFLECTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-01731-TMP |
| | ) | |
| SOLAR REFLECTIONS GLASS | ) | |
| TINTING, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

The above-styled cause is before the court on the Motions to Dismiss filed by defendants Solar Reflections Glass Tinting, LLC ("SRGT"), Jeffrey L. Terry, and Travis Gutherie (together "defendants"). (Docs. 9, 10).[1] The parties consented to dispositive jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c). (Doc. 13).

---

[1] It is not clear to the court why two motions to dismiss were filed by the defendants. The motions appear to be identical, they were filed the same day, and both motions are filed on behalf of all three defendants. In any event, this memorandum opinion and corresponding order will resolve both motions.

## I.    BACKGROUND

The plaintiff, Solar Reflections, LLC ("Solar Reflections"), filed the above-styled cause in this court on October 24, 2016, alleging that the defendants have engaged and continue to engage in trademark infringement, trademark dilution, false designation of origin, and deceptive trade practices.  (Doc. 1).  The plaintiff raises its claims of trademark infringement and trademark dilution under both the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and Alabama's Trademark Act, Alabama Code § 8-12-1, *et seq.*  The plaintiff's claim of false designation of origin arises from 15 U.S.C. §§ 1114 and 1116.  Finally, the plaintiff's deceptive trade practices claim arises from Alabama Code § 8-19-1, *et seq.*

The plaintiff filed a motion for entry of default and a motion for default judgment on November 29, 2016.  (Docs. 7,8).  The court denied the motions as moot on January 24, 2017, after the defendants appeared and filed the instant motions on December 5, 2016.  (Doc. 15).  On October 27, 2016, the plaintiff filed a Motion for Preliminary Injunction, accompanied by a brief in support of the motion.  (Docs. 4, 5).  The plaintiff filed a "Notice of No Opposition" to the motion, arguing that the defendants' failure to respond to the motion by the date set by the court indicated that the defendants did not object to the preliminary injunction.  (Doc. 18).  The defendants responded on February 13, 2017, asserting that the defendants' Motions to Dismiss filed on December 5, 2016, should be

construed as the response to the motion for preliminary injunction. (Doc. 21). The plaintiff filed a motion to strike the response, which was denied by the court. (Docs. 23, 26).

Defendants filed their Motions to Dismiss on December 5, 2016.[2] (Docs. 9, 10). The plaintiff responded on December 13, 2016. (Doc. 12). The defendants filed a joint reply on February 6, 2017. (Doc. 17). On the same day, the plaintiff filed a motion to strike the reply or, in the alternative, moved for leave to file a surreply. (Doc. 19). The court granted the motion in part, allowing the plaintiff to file a surreply. (Doc. 27). The plaintiff's surreply was filed on March 22, 2017. (Doc. 29). The court will first address the defendants' Motions to Dismiss because, should the motions be granted, the need for the court to address the plaintiff's motion for preliminary injunction would be obviated.

## II. FACTS

Assuming the well-pleaded facts and reasonable inferences alleged in the complaint to be true, the facts at issue in the above-styled action are as follows. The plaintiff, Solar Reflections, is an Alabama company based in Jasper, Alabama, with its primary place of business in Birmingham, Alabama, but does business

---

[2]   Plaintiff argues that the defendants' motion to dismiss is untimely under Rule 12 of the Federal Rules of Civil Procedure. While the plaintiff is not incorrect, the court has the discretion to manage its docket and has allowed the motion. Furthermore, the plaintiff was given the opportunity to fully respond to the motion.

across the state. Solar Reflections has been doing business under that name since 2010, and it registered "Solar Reflections" as its trade name with the Alabama Secretary of State in October of 2014. Defendant SRGT is an Alabama company that primarily does business in Jasper, Alabama, but also does business across the state.

Plaintiff Solar Reflections sells window tinting products and provides installation services to residential and commercial customers. It has established a reputation in the local industry for high-quality services and products. Solar Reflections also is the only licensed dealer in the state for Hüper Optik window film, a premium line of patented window films. Defendant SRGT opened a store in Jasper, Alabama, in August of 2014 under the name Solar Reflections Glass Tinting. SRGT's products are nearly identical to the plaintiff's, including window tinting film for commercial and residential structures.

Defendant SRGT did not seek the plaintiff's permission to use the name "Solar Reflections" as part of its name. Beginning shortly after SRGT's store opened, the plaintiff requested multiple times that SRGT cease using the name "Solar Reflections." SRGT refused. The plaintiff filed suit against SRGT in the Circuit Court of Walker County, Alabama, on December 9, 2014, citing trademark infringement, intentional trademark infringement, and unlawful trade practices under Alabama law. That case remains pending and awaiting trial.

Since June 2015, the plaintiff has documented from Jefferson County, Alabama, at least nineteen instances when customers or potential customers were confused by the similarity of the names of the two businesses. As a result, customers have blamed the plaintiff for poor service actually provided by SRGT. Individuals working with SRGT, including defendants Jeffrey Terry and Travis Gutherie, misrepresented their qualifications, references, credentials, and personnel information to convince potential customers that SRGT actually is the plaintiff business, Solar Reflections, trading on community goodwill tied to the plaintiff's trade name. This has resulted in damage to the plaintiff's goodwill and reputation as well as monetary damages, all of which is ongoing.

## III. DISCUSSION

The defendants argue in support of their motions that the complaint filed in this court should be dismissed because plaintiff already commenced and has pending another case in the Circuit Court of Walker County, Alabama, arising out of the same facts, and because the plaintiff's case filed in this court is barred by the applicable statute of limitations.[3] Alternatively, the defendants argue that this

---

[3]  Plaintiff correctly asserts that the defendants' original motions to dismiss asserted only the single argument that Ala. Code § 6-5-440 precluded plaintiff from filing a lawsuit in this court after it had chosen to commence the earlier action in the Circuit Court of Walker County. Plaintiff argues that the defendant are not allowed to raise new arguments in support of their motion in a reply brief filed in response to the plaintiff's opposition to the motions to dismiss.

court should abstain from hearing this case due to the potential for conflicting judgments or that the court should stay the case pending resolution of the state-court case.

## A. Case Pending in Alabama State Court

The defendants argue that the complaint should be dismissed because a substantially similar case is currently pending in state court. The plaintiff filed a lawsuit arising out the same underlying facts in the Circuit Court for Walker County, Alabama, on December 9, 2014, almost two years earlier than the filing-date of this case. The defendants argue that this court is precluded from exercising jurisdiction over this case by Alabama Code § 6-5-440, which states:

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.

The defendants contend that this statute applies equally to federal and state courts.

The defendants are correct that, within the statute, the phrase "courts of this state" includes both the state and federal courts located within the state's borders. See Clark v. Wells Fargo Bank, N.A., 24 So. 3d 424, 427 (Ala. 2009). However,

---

Because all parties have been afforded the opportunity to address all issue, the plaintiff is not prejudiced by the defendants' added arguments.

the Supremacy Clause dictates that the defendants' argument—that an Alabama statute deprives this federal court of jurisdiction over the above-styled action—must fail. Furthermore, the Alabama statute cited by the defendants was not intended by the state to circumvent the Supremacy Clause, and even if such was the intent, it cannot do so. Instead, the statute was intended to provide guidance to the state courts and to prevent state courts from adjudicating a case that previously was filed in a federal court located in Alabama. The Supreme Court of Alabama acknowledged as much in a detailed opinion written by Alabama Supreme Court Justice Shaw in 2009. Justice Shaw, citing decades-old Alabama precedent, explained:

> Because Clark's state-court action is considered to have been filed *before* the action in the federal court, § 6-5-440 does not apply.
>
> > "Unquestionably, the statutory and case law of this state stands for the proposition that a person cannot prosecute two suits at the same time, for the same cause against the same party. The purpose of the rule is to avoid multiplicity of suits and vexatious litigation. Title 7, § 146, Code; *Foster v. Napier*, 73 Ala. 595 (1883); *Sessions v. Jack Cole Co.*, 276 Ala. 10, 158 So. 2d 652 (1963). The rule had been applied where one suit is filed in federal court and another is filed in state court, and this Court has held that a state court action can be abated if there is *pending* a federal court action involving the same cause against the same party. *Fegaro v. South Central Bell*, 287 Ala. 407, 252 So. 2d 66 (1971); *Watson v. Mobile & O. RR.*, 233 Ala. 690, 173 So. 43 (1937). It should be noted, however, that in *Fegaro* and *Watson*, the state suit was filed after the federal suit was filed. In

other words, to quote Alabama's statute, 'the pendency of the former (federal suit) is a good defense to the latter (state suit).' We are faced with the opposite situation here. The question is: Does the rule of *Fegaro* and *Watson* apply? We think not.

"Had Brown Service and Liberty National attempted to get the second suit in federal court abated, they would have failed. The federal rule is summarized in *Ermentrout v. Commonwealth Oil Co.*, 220 F.2d 527 (5th Cir. 1955):

" '. . . [T]he pendency of a state court action in personam is no ground for abatement or stay of a like action in the federal court, although the same issues are being tried and the federal action is subsequent to the state court action. The federal court may not abdicate its authority or duty in favor of the state jurisdiction.' [Citations omitted.]"

*Johnson v. Brown-Serv. Ins. Co.*, 293 Ala. 549, 551, 307 So. 2d 518, 520 (1974). *See also First Tennessee Bank, N.A. v. Snell*, 718 So. 2d 20, 27 n. 3 (Ala. 1998) (See, J., concurring in result) ("I note that this Court has properly held that Alabama's statutory abatement rule does not operate where the first-filed action is pending in a state court and the second-filed action is pending in a federal court. The abatement statute does not provide for abatement of first-filed actions, and cannot abate federal court actions.").

Clark v. Wells Fargo Bank, N.A., 24 So.3d 424 (2009). To the extent the defendants argue that this action must be dismissed based on the pendency of a previously filed state court suit, the motion is due to be denied.

## B. Statute of Limitations

The defendants further argue that the plaintiff's claims under both the Lanham Act and Alabama state law are barred by applicable statutes of limitation.[4]

### 1. Lanham Act

In the complaint, the plaintiff asserts claims of trademark infringement, trademark dilution, and false designation of origin, all under the Lanham Act, 15 U.S.C. § 1051, *et seq.*[5] The Lanham Act itself does not provide a statute of limitations. Rather, case law has established that the timeliness of Lanham Act claims is managed under the equitable doctrine of laches. Kason Industries, Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997), citing Conagra, Inc. v. Singleton, 743 F.2d 1508, 1517 (11th Cir. 1984). Although the statute of limitation applicable to the most analogous state cause of action is a

---

[4]   The defendants' arguments addressed herein, except the argument pursuant to Ala. Code § 6-5-440, arise from the defendants' reply brief, rather than the initial motion. To the extent the plaintiff contends that the defendants' arguments, with the exception of the argument pursuant to § 6-5-440, are not properly before the court, the court declines to disregard the arguments on that basis alone. It is true that "arguments raised for the first time in a reply brief are not properly before a reviewing court." Herring v. Secretary, Department of Corrections, 397 F.3d 1338, 1342 (11th Cir. 2005). However, part of the reasoning for that general rule is to avoid endless surreply briefs and to avoid having the court do research on any party's behalf. See Jurich v. Compass Marine, Inc., 906 F. Supp. 2d 1225, n. 7 (S.D. Ala. 2012), quoting Hardy v. Jim Walter Homes, Inc., 2008 WL 906455 at *8 (S.D. Ala. 2008). In the instant case, the court allowed the plaintiff to file a single surreply brief to give the plaintiff an opportunity to address any new arguments raised by the defendants. Although this court, for good reason, does not generally address arguments raised in a reply brief, it is not precluded from so doing.

[5]   Although not actually denominated as "counts," as required by Rule 10(b), Fed. R. Civ. P., plaintiff's claims are divided sufficiently to make clear the distinct legal and factual basis of each.

"touchstone" for the laches analysis, <u>see</u> <u>Kason Industries</u>, *supra*, it does not provide a rigid cut-off of claims outside the time period.[6] The court of appeals summarized this authority as follows:

> The equitable defense of estoppel by laches may be applied to bar claims for trade dress or trademark infringement brought under the Lanham Act. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir. 1984). Though the doctrine is an equitable doctrine that should be applied flexibly, a defendant must demonstrate the presence of three elements in order to successfully assert laches as a defense: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986). The Lanham Act does not contain a statute of limitations. However, in trademark cases this circuit has followed the Sixth Circuit, which applies the period for analogous state law claims as the touchstone for laches. *Id*. at 1546 (citing

---

[6]    The comments following Section 31 of the RESTATEMENT (THIRD) OF UNFAIR COMPETITION (1995), state:

> The role of statutes of limitations in trademark infringement actions remains uncertain. There is general agreement that it is the doctrine of laches rather than the statute of limitations that normally governs the availability of injunctive relief since infringement is typically a continuing wrong. A few cases indicate that the statute of limitations may bar claims for monetary relief with respect to damages incurred outside the statutory period. Other cases treat the action for trademark infringement as inherently equitable and rely solely on principles of laches to determine the availability of both monetary and injunctive relief. These latter cases, however, sometimes incorporate the analogous statutory limitations period into the analysis of laches through a presumption that laches will ordinarily bar the recovery of damages incurred outside the analogous limitations period. Some cases also adopt a presumption that delay for less than the limitations period does not constitute laches, but all courts recognize that in some circumstances even a short delay may so prejudice the defendant that the denial of monetary relief is appropriate.

*Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985)).

Kason Industries, Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997).  "Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action.  When that occurs, '[w]e have generally concluded that Congress intend that the courts apply the most closely analogous statute of limitations under state law.'"  Reed v. United Transp. Union, 488 U.S. 319, 323, 109 S. Ct. 621, 625, 102 L. Ed. 2d 665 (1989), quoting DelCostello v. Teamsters, 462 U.S. 151, 158, 103 S. Ct. 2281, 2287, 76 L. Ed. 2d 476 (1983).

In this district, a few cases have considered whether the most analogous Alabama statute of limitations for Lanham Act claims is the one-year period set by the Alabama Deceptive Trade Practices Act, Alabama Code 1975 § 8-19-14.  See Hibbett Sporting Goods, Inc. v. Hibbett Patient Care, LLC, 2014 WL 12603509, *4, n. 6 (N.D. Ala. October 3, 2014), citing Thompson v. Town of Double Springs, et al., Case No. 6:04-cv-03056-LSC at 2-3 (N.D. Ala. August 29, 2005) ("In their brief of August 5, 2005, (Doc. 45), the defendants point to Judge Bowdre's opinion of September 9, 2002, in the companion case, CV-01-HS-1223-J (Doc. 207), in which Judge Bowdre reasoned that, because the Lanham Act borrows the most analogous state-law statute of limitations and the Eleventh Circuit has held that the

Georgia Uniform Deceptive Trade Practices Act is the most analogous state law in Georgia, the Alabama Deceptive Trade Practices Act ("ADTPA") is the most analogous state law in Alabama. This Court agrees with that reasoning. Therefore, the one-year statute of limitations of the Alabama Deceptive Trade Practices Act is applicable to Lanham Act claims in Alabama.") The court is not persuaded by these precedents. First, the court explicitly declined to address the question in <u>Hibbett</u>, assuming but not deciding that the one-year limitation applied. Judge Bowdre's decision in <u>Thompson</u> does not refer by analogy to the Georgia Uniform Deceptive Trade Practices Act. Indeed, given the "elusive" role of statues of limitations applicable to Lanham Act claims, <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 836 (9th Cir. 2002), these precedents do not persuade the court that the Alabama Deceptive Trade Practices Act necessarily is the most analogous state statute.[7]

---

[7] The plaintiff argues, citing <u>Kason Industries v. Component Hardware Group, Inc.</u>, 120 F.3d 1199 (11th Cir. 1997), that a true statute of limitations defense may not be made in a Lanham Act case. Instead, plaintiffs argue, the applicable statute of limitations may only be used as a "jumping-off" point to determine whether laches is an applicable defense to the plaintiff's claim. The court agrees. The lack of a limitation period in the Lanham Act has caused consternation in the courts. As the Ninth Circuit has said, "The proper interplay between laches and the statute of limitations for Lanham Act claims is somewhat elusive. See, e.g., RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 31 cmt. a (discussing the uncertain role of the statute of limitations for Lanham Act claims)." <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 836 (9th Cir. 2002). The Eleventh Circuit's <u>Kason</u> decision explicitly followed the Sixth Circuit's conclusion in <u>Tandy Corp. v. Malone & Hyde, Inc.</u>, 769 F.2d 362, 365 (6th Cir. 1985), which held that "In determining when a plaintiff's suit should be barred under the [Lanham] Act, courts have consistently used principles of laches as developed by courts of equity." <u>Tandy Corp. v. Malone & Hyde, Inc.</u>, 769 F.2d 362, 365 (6th Cir. 1985). Thus, while an analogous state statute of

In terms of substantive rights and remedies, the Alabama Trademark Act is the most analogous to the Lanham Act. See Alabama Code § 8-12-1 *et seq.* Like the Lanham Act, the Alabama Trademark Act provides for the registration of trademarks, including trade names, and provides both damages and injunctive remedies for violation of the owner's rights in such marks. See Alabama Code §§ 8-12-16 and 8-12-18. Unfortunately, the Alabama statute also does not contain a statutorily-defined limitation period. In any event, it is not necessary for the court to decide whether the one-year limitation of the ADTPA or the two-year residual limitation period under Alabama Code § 6-2-38 applies because whatever delay occurred was excusable and not unduly prejudicial to the defendants, as discussed below.

The above-styled action was filed in this court on October 24, 2016. Consistent with Kason, the laches analysis asks whether this resulted in an undue delay in prosecuting the claim; if so, whether the delay was excusable; and was the defendant unduly prejudiced by the delay. Kason Industries, Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997); Angel Flight of Georgia, Inc. v. Angel Flight America, Inc., 522 F.3d 1200, 1207 (11th Cir. 2008) ("[A] defendant invoking laches typically must show the plaintiff inexcusably

---

limitation may provide a "touchstone" for the timeliness of a Lanham Act claim, it operates only in the context of laches, not as a traditional limitation period.

delayed in enforcing its trademark rights, thereby causing the defendant undue prejudice.")(citing  Citibank, N.A. v. Citibanc Group, Inc., 724 F.2d 1540, 1546 (11th Cir. 1984)).   The first prong of the analysis—whether there was undue delay—perhaps is measured against the one-year limitation provided by Alabama Code § 8-19-14, which requires that the plaintiff "discover[ed] or reasonably should have discovered" the defendants' violations no earlier than Friday, October 23, 2015.  Because the plaintiff filed a "Complaint for Trademark Infringement and Unlawful Trade Practices" in the Circuit Court for Walker County, Alabama on December 9, 2014 (Doc. 10-2, p. 4), based on the same factual allegations set out in the instant case, it clearly was aware of the claim almost two years before the instant action was filed.   However, "[t]he clock stops for purposes of calculating delay when the defendant is notified of plaintiff's objections."  See Armco, Inc. v. Armco Burglar Alarm Co., 693 F.2d 1155, 1162 (5th Cir.1982); see also Angel Flight of Georgia, Inc. v. Angel Flight Southeast, Inc., 424 F. Supp. 2d 1366, 1370-1372 (N.D. Ga. 2006)(internal notes omitted).   The complaint in this case alleges at paragraph 14 that the alleged infringing use began "sometime in August 2014," (Doc. 1, ¶ 14), and plaintiff filed suit in the Circuit Court of Walker County on December 9, 2014.  Defendants were notified of the plaintiff's claim less than five months after it came to plaintiff's attention.  Thus, for purposes of the first prong of the laches analysis, the complaint filed by the plaintiff in the

instant action, although filed out-of-time under the applicable state statute, did not amount to an undue delay in prosecuting the claim for purposes of laches as the "clock" stopped running at least by the time the state-court action was filed in December 2014.

For laches to bar a Lanham Act claim, even when there is undue delay, the defendant must show also that the delay was not excusable and that it resulted in undue prejudice to him. An undue delay in the presentation of a claim may remain excusable if "the likelihood of confusion is inevitable, or so strong as to outweigh the effect of the plaintiff's delay in bringing a suit, a court may in its discretion grant injunctive relief, even in cases where a suit for damages is appropriately barred." Kason, 120 F.3d at 1207. "[B]ecause of the public interest in preventing the deception of consumers, delay by the trademark owner will not ordinarily disable it from obtaining an injunction if there is strong evidence of likely or actual confusion." Id. (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 31, comment e (1995)). Here, plaintiff alleges that the similarity in names has resulted in actual confusion, and this is sufficient to overcome the laches defense, at least in the absence of further evidence developed during discovery.[8] Likewise, there is no indication that the defendant has suffered undue prejudice. Within mere months of

---

[8] As noted above, on the defendants' motions to dismiss, the court assumes as true the well-pleaded factual allegation of the complaint and the reasonable inferences that can be drawn from those facts. Evidence developed later may or may not show that the actual facts are different.

starting business in August 2014, the plaintiff notified the defendant of plaintiff's claim that Lanham Act infringement of plaintiff's name was occurring. The defendant has not been lulled by plaintiff's silence into further investment or reliance on the name. Plaintiff timely notified the defendant of the allegedly infringing name, yet the defendant continued its use. Any prejudice the defendant might now suffer is due to its own choices.

Taking the facts in the light most favorable to the nonmoving plaintiff, the likelihood of confusion by the public is high. Furthermore, although the instant action was filed outside the applicable statute of limitations, the plaintiff notified the defendant of the alleged infringement well within one year of plaintiff's discovery of it. Also, plaintiff alleges that ongoing violations are occurring— hence the application for preliminary injunctive relief. Accordingly, the defendants' motions to dismiss the plaintiff's Lanham Act claims are due to be denied.

### 2. *Alabama State-Law Claims*

The defendant also argues in the reply to the motions to dismiss that the plaintiff's state-law claims are barred by the applicable statute of limitations. The plaintiff asserts its state-law claims of trademark infringement and trademark dilution pursuant to <u>Alabama Code</u> § 8-12-1, *et seq*., and its deceptive trade practices claim under the Alabama Deceptive Trade Practices Act is set out in

Alabama Code § 8-19-1 through § 8-19-15.  The Alabama Trademark Act appears not to have a statute of limitation, raising the question whether the two-year residual limitation period at Alabama Code § 6-2-38 applies to it.  The limitations provision in the Alabama Deceptive Trade Practices Act, however, states that "no action may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action."  Alabama Code § 8-19-14.  However, the Chapter concerning the registration of trademarks and service marks states that "[a]ny owner of a mark registered under this article may proceed to suit to enjoin the manufacture, use, display, or sale of any counterfeits or imitations thereof. . ." Alabama Code § 8-12-18.  Because the complaint alleges an ongoing infringement, equity dictates that the right to injunctive relief, at least, should not be foreclosed by either statute of limitations.  The matter of whether or to what extent the plaintiff may be awarded damages under either claim is another matter.  However, as stated with regard to the plaintiff's Lanham Act claims, the court need not take up that matter today.  The motion to dismiss the plaintiff's state-law claims pursuant to the statute of limitation is due to be denied, subject to being revisited on a motion for summary judgment.

## C. **Colorado River** Abstention

In the defendants' reply to the plaintiff's response to the motion to dismiss, the defendants argue that the Colorado River abstention factors are met, and the court should abstain from presiding over the matter.[9] (Doc. 17, pp. 4-12). The Supreme Court in Colorado River Water Conservation District v. United States first emphasizes that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." 424 U.S. 800, 813, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976). The Court set out three instances in which abstention is appropriate: 1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law"; 2) cases "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and 3) cases "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." Id. at 814, 816 (internal citations omitted).

The Court also recognized, however, that even cases outside those three abstention categories may warrant abstention under certain circumstances:

---

[9] In the surreply, the plaintiffs argue that the defendants' Colorado River argument is untimely, as it was raised only in the reply brief. The court allows the defendants' argument for the reasons already set out herein.

[T]here are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S. Ct. 219, 221, 96 L. Ed. 200, 203 (1952). See Columbia Plaza Corp. v. Security National Bank, 173 U.S. App. D.C. 403, 525 F.2d 620 (1975). Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." McClellan v. Carland, *supra*, 217 U.S. at 282, 30 S. Ct. at 505, 54 L. Ed., at 767. See Donovan v. City of Dallas, 377 U.S. 408, 84 S. Ct. 1579, 12 L. Ed. 2d 409 (1964). As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., *supra*; Steelman v. All Continent Corp., 301 U.S. 278, 57 S. Ct. 705, 81 L. Ed. 1085 (1937); Landis v. North American Co., 299 U.S. 248, 254, 57 S. Ct. 163, 165, 81 L. Ed. 153, 158 (1936). This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 415, 84 S. Ct. 1, 464, 11 L. Ed. 2d 440, 444 (1964); McClellan v. Carland, *supra*, 217 U.S., at 281, 30 S. Ct. at 504, 54 L. Ed. at 766; Cohens v. Virginia, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821) (dictum). Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other

courts.  Donovan v. City of Dallas, *supra*, 377 U.S. at 412, 84 S. Ct. at 413, 12 L. Ed. 2d at 1582; Princess Lida v. Thompson, 305 U.S. 456, 466, 59 S. Ct. 275, 280, 83 L. Ed. 285, 291 (1939); United States v. Bank of New York & Trust Co., 296 U.S. 463, 477, 56 S. Ct. 343, 347, 80 L. Ed. 331, 338 (1936). But cf. Markham v. Allen, 326 U.S. 490, 66 S. Ct. 296, 90 L. Ed. 256 (1946); United States v. Klein, 303 U.S. 276, 58 S. Ct. 536, 82 L. Ed. 840 (1938).  This has been true even where the Government was a claimant in existing state proceedings and then sought to invoke district-court jurisdiction under the jurisdictional provision antecedent to 28 U.S.C. § 1345. United States v. Bank of New York & Trust Co., *supra*, 296 U.S. at 479, 56 S. Ct. at 348, 80 L. Ed. at 339. But cf. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 227-228, 77 S. Ct. 287, 291-292, 1 L. Ed. 2d 267, 274 (1957).  In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); the desirability of avoiding piecemeal litigation, cf. Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S. Ct. 1173, 1175, 86 L. Ed. 1620, 1625 (1942); and the order in which jurisdiction was obtained by the concurrent forums, Pacific Live Stock Co. v. Oregon Water Bd., 241 U.S. 440, 447, 36 S. Ct. 637, 640, 60 L. Ed. 1084, 1096 (1916).  No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.  See Landis v. North American Co., *supra*, 299 U.S. at 254-255, 57 S. Ct. at 165-166, 81 L. Ed. at 158.  Only the clearest of justifications will warrant dismissal.

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817–19, 96 S. Ct. 1236, 1246–47, 47 L. Ed. 2d 483 (1976).

The Eleventh Circuit discussed the Colorado River abstention factors in Jackson-Platts v. General Electric Capital Corporation, 727 F.3d 1127 (11th Cir. 2013) stating:

Where there are parallel federal and state proceedings, abstention under the <u>Colorado River</u> doctrine is still only warranted in exceptional circumstances. Federal courts must consider six factors in determining whether <u>Colorado River</u> abstention is appropriate:

(1) the order in which the courts assumed jurisdiction over property;
(2) the relative inconvenience of the fora;
(3) the order in which jurisdiction was obtained and the relative progress of the two actions;
(4) the desire to avoid piecemeal litigation;
(5) whether federal law provides the rule of decision; and
(6) whether the state court will adequately protect the rights of all parties.

No single factor is dispositive, and we are required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them. Finally, we apply these factors flexibly and pragmatically, not mechanically.

727 F.3d 1127, 1141 (11th Cir. 2013) (internal citations omitted).

The parties each admit that the first factor, "the order in which the courts assumed jurisdiction over property," is irrelevant to the instant case, as no real-property is at issue in this action. The issue of the "relative inconvenience of the fora," also is inconsequential. The attorneys representing the parties in the matter all are located in Birmingham, Alabama, the city in which the Southern Division of the Northern District of Alabama generally hears cases. The events giving rise to the instant action appear to have taken place predominantly in Jasper, Alabama, which is located approximately 40 miles from Birmingham, Alabama. Any inconvenience that parties or witnesses may face in traveling from Jasper to

Birmingham is negligible and, therefore, no basis on which this court should abstain from hearing the instant case.

The third factor assesses the order in which the various courts took jurisdiction over the cases and the progress made in each case. The state court took jurisdiction of its case first, as the state-court action was filed in December of 2014 and the instant case was filed in October of 2016. The instant case has discovery due per the scheduling order on June 16, 2017, and dispositive motions due by July 3, 2017. (Doc. 28). The parties indicate that a trial date has not yet been set in the state-court action and a discovery motion remains pending in that action as well. It seems to the court that the progress in the cases is not so disparate as to invoke abstention. The parties have not indicated that a trial date has been set in the state-court case or that such a date is likely to be set in the near future.

This brings the court to the fourth factor, "the desire to avoid piecemeal litigation." This arguably is the most persuasive ground on which the defendants argue for this court's abstention. Circuit and Supreme Court precedent, however, makes abundantly clear that this court's declination to exercise jurisdiction in a case is a resolution of last resort. Therefore, if piecemeal litigation can be avoided without abstention, abstention should not be invoked. This court can fairly simply avoid issuing a conflicting ruling. Should the state court hold a trial in this case or

issue a dispositive ruling, it is the burden of the parties to inform this court. At that juncture this court may take judicial notice of the state-court decision or undertake some other resolution to avoid piecemeal litigation. Abstention is not justified based on the mere possibility of piecemeal litigation or conflicting rulings.

The fifth and sixth <u>Colorado River</u> factors are "whether federal law provides the rule of decision," and "whether the state court will adequately protect the rights of all parties." The federal law clearly provides the rule of decision for the plaintiff's Lanham Act claims, and the Lanham Act claims were not raised in the state court case. As for the state-law claims, this court regularly takes up state-law issues when supplemental jurisdiction exists for those issues. Accordingly, the fact that the state-court could do perfectly well deciding the plaintiff's overlapping state-law claims is not reason enough to persuade this court to abstain from hearing this case. Therefore, the defendants' motion for the court to abstain from hearing this case under the <u>Colorado River</u> abstention factors is due to be denied.

**D. Stay**

Finally, the defendants move that this court stay proceedings in this action pending the resolution of the state-court matter. The motion is due to be denied. The denial, however, does not foreclose either party from requesting a stay of the case at a later date, should progress in the state court appear to warrant such action.

## IV.    CONCLUSION

For the reasons stated herein, the Motions to Dismiss filed by the defendants are

due to be DENIED.  A separate Order will be entered concurrently herewith.

DATED this 13th day of June, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE